UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

LOU-LOU LAYENS,                                  :

                Plaintiff,       :

    -against-                                     :     **REPORT AND
RECOMMENDATION**
AMBOY BUS CO.,                                    :     **TO THE HONORABLE
DEBORAH A. BATTS**
                Defendant.       :

                                  10 Civ. 9319 (DAB) (FM)
------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   7/18/11

**FRANK MAAS,** United States Magistrate Judge.

       In June 2010, <u>pro se</u> plaintiff Loulou Layens ("Layens")[1] was fired from his job as a school bus driver for defendant Amboy Bus Company ("Amboy") based on his alleged insubordination. Pursuant to the collective bargaining agreement between Amboy and Layens' union, Layens challenged his termination in an arbitration proceeding, contending that he was not insubordinate and, therefore, that Amboy lacked "just cause" to terminate him. After the arbitrator found in favor of Amboy, Layens commenced an Article 75 proceeding in Supreme Court, New York County, seeking to vacate the arbitrator's decision.[2] Amboy then removed the case to this Court, pursuant to 28 U.S.C. § 1446, on the basis of federal question jurisdiction, alleging that this case arises under

---

    [1]    The removal petition spells Layens' first name as Lou-Lou. I have used the spelling Layens used in his papers.

    [2]    Article 75 of the New York Civil Practice Law and Rules provides that an arbitral award <u>shall</u> be vacated if the rights of a party were prejudiced by such factors as "corruption, fraud or misconduct," partiality of the arbitrator, the arbitrator exceeding his power, or a failure to comply with the procedures of Article 75. N.Y. C.P.L.R. § 7511(b)(1).

the National Labor Relations Act, 29 U.S.C. § 141, et seq., because Layens asks the Court to vacate a labor arbitration award.

Amboy has moved to dismiss this case pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that (a) this action involves the same claim and issues of law and fact as the arbitration and, therefore, is barred by the doctrines of res judicata and collateral estoppel, and (b) even if the case is properly before the Court, Layens has no basis for vacating the arbitrator's decision.

For the reasons set forth below, Amboy's motion to dismiss should be granted.

I.   Background

   A.   Facts

The following factual summary is based on the testimony during the arbitration proceeding, as set forth in the arbitrator's "Opinion and Award," dated October 13, 2010 ("Op."), and certain exhibits offered as evidence during that proceeding, all of which were attached to Layens' Article 75 petition ("Petition" or "Pet.").

   1.   Layens' Termination

On May 26, 2010, at approximately 4 p.m., Layens was driving an empty school bus near the intersection of 140th Street and Hamilton Place in Manhattan when he saw a motorcycle lying in the middle of the street. (See Op. at 2; Ex. B, Part I).[3] Because

---

[3]   "Ex. _" refers to the exhibits annexed to the Petition.

the motorcycle was obstructing his path, Layens exited the bus and, with the help of two other individuals, moved the motorcycle out of the street. (Op. at 9). Layens contends that he did not damage the motorcycle in any way. (See id.).

The next day, Nalinie Mulahoo ("Mulahoo"), a dispatcher for Amboy, received a call from a man who said he was the owner of the motorcycle. (See id. at 7-8). The man claimed that one of Amboy's buses had hit his motorcycle the previous day, bending the motorcycle's front rotor. (See id.; Ex. B, Part I). He provided the number of the bus and a partial license plate number. (Op. at 7). Recognizing that Layens recently had been assigned to drive the bus identified by the caller,[4] Mulahoo asked Layens if he had any knowledge of the incident. (Id. at 8). Layens admitted that he had moved a motorcycle out of the street because it was blocking his path, but denied hitting it. (Id.). Mulahoo then asked Layens to complete an incident report, which he did on May 28, 2010. (Id.).

On May 28, 2010, Mulahoo received another call from the motorcycle owner, during which he provided Mulahoo with the complete license plate number of the bus that allegedly hit his motorcycle. (Id.). Mulahoo then relayed this information to Thomas Joy ("Joy"), a Contract Manager at Amboy's Exterior Street Garage, who

---

[4] There was an inconsistency between the bus number provided by the caller (506134), and the bus number that Layens recorded on his "trip card" (50668). (See Ex. B, Parts I, II). As the arbitrator correctly noted, however, this inconsistency is of little relevance because "the issue in this case related to [Layens'] alleged insubordination and not whether [he] was actually involved in the accident with the motorcycle." (Op. at 6 n.2).

3

determined that the incident should be processed "as an accident by notifying [Amboy's] insurance company of a potential claim." (Id. at 3-4).

At this point, the parties' stories diverge. According to Joy, on the morning of June 1, 2010, he asked Layens to complete an accident report.[5] Layens responded that he knew nothing about the alleged accident. Although Joy explained that Layens need only write "no knowledge" on the accident report, Layens apparently refused to complete the report. Joy then asked Layens to meet with him again later that day, and to bring his union shop steward with him. (Id. at 4-5).

Joy further testified that, at the subsequent meeting, both he and the shop steward told Layens to fill out an accident report stating that he had "no knowledge" of the accident, but Layens again refused. Joy then told Layens to speak with Joe DeMarco ("DeMarco"), an Assistant General Manager at Amboy. Layens declined to follow this directive as well, however, insisting that he had no knowledge of any incident involving a motorcycle. When Mulahoo, who also was present at the meeting, attempted to show Layens the incident report that he had submitted just a few days earlier, Layens "ripped it out of her hands and tore it into pieces." At that point, Joy told Layens that he would not tolerate that type of behavior, and that Layens "should leave the property." After subsequently speaking with a delegate from Layens' union, however, Joy agreed not to fire Layens until a hearing had been held. Joy also permitted Layens to work for the remainder of the day. (Id. at 5, 8).

---

[5] An accident report evidently is different than an incident report.

The hearing took place later that day. Although Layens completed an accident report prior to the hearing, in which he stated that he had "no knowledge" of the accident, he nevertheless was terminated at the hearing. (Id. at 5-6).

For his part, Layens offered a different account of the events of June 1, 2010. Layens acknowledged that he met with Joy that day and that Joy asked him to fill out an accident report stating that he had "no knowledge of the accident," but explained that he never "refused" to fill out the accident report. He testified that he "merely wanted to get answers to his questions before completing the form." In addition, Layens denied that Joy told him to speak to DeMarco. He further denied snatching the incident report from Mulahoo, though he admitted that he destroyed it without asking for permission. (See id. at 9-10).

2.   Arbitrator's Decision

The parties submitted the following questions to the arbitrator: "Did [Amboy] have just cause to discharge Loulou Layens; and, if not, what shall be the remedy?" (Id. at 2). The arbitrator found that Layens "engaged in no less than three, and maybe as many as four, counts of insubordination," which he defined as a "refusal to follow the directive of a supervisor," unless complying with such a directive "would threaten the safety and health of the worker or other employees or if the task would require the commission of a criminal act."[6] (Id. at 13-15). Indeed, the arbitrator noted

---

[6]   Layens' four acts of insubordination were his: (i) refusal to complete the accident report when asked by Joy on the morning of June 1, 2010; (ii) subsequent refusal to fill out an
(continued...)

that even if he "were to find a lack of proof as to one, or even two, of the alleged instances of insubordination, there is uncontroverted testimony and an admission by [Layens] that he committed at least one act of insubordination," as Layens "admitted that no one gave him permission to rip up or throw away the incident report." (Id. at 14-15). The arbitrator found that "[t]earing up a company record, after seizing it from Mulahoo's hands, shows that he lost all control of his behavior and respect for management." (Id. at 15-16). Accordingly, the arbitrator concluded that Amboy "had the right to believe that [Layens] could no longer be trusted to follow the directives of his supervisors" and, therefore, had just cause to fire him. (Id. at 16).

B.   Procedural History

Layens filed his Petition in Supreme Court, New York County, on November 12, 2010. (Pet. at 3). On December 13, 2010, Amboy removed the case to this Court. (ECF No. 1). Three days later, Your Honor referred the matter to me for general pretrial supervision and to report and recommend with respect to dispositive motions. (ECF No. 4).

On January 6, 2011, Amboy moved to dismiss the case pursuant to Rule 12(b)(6), arguing that the proceeding is barred by the doctrines of res judicata and collateral estoppel, and, in any event, Layens has failed to state a claim to vacate the arbitrator's award. (See ECF No. 7). Thereafter, Layens served opposition papers, which

---

[6](...continued)
accident report later that day; (iii) refusal to speak to DeMarco; and (iv) destruction of the incident report.

are dated February 24, 2011.  By letter dated March 7, 2011, Amboy advised the Court that it did not intend to submit a reply.  The motion to dismiss therefore is fully submitted.

II.     Discussion

   A.     Standard of Review

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a plaintiff's claims for relief.  Krasner v. HSH Nordbank AG, 680 F. Supp. 2d 502, 511 (S.D.N.Y. 2010).  In deciding the motion, the Court must accept as true all well-pleaded factual allegations made in the complaint and draw all reasonable inferences in favor of the plaintiff.  Allaire Corp. v. Okumus, 433 F.3d 248, 249-50 (2d Cir. 2006).  However, "[t]he court need not accept as true an allegation that is contradicted by documents on which the complaint relies," In re Bristol-Myers Squibb Sec. Litig., 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004), as such an allegation is not "well-pleaded."  Rieger v. Drabinsky (In re Livent, Inc. Noteholders Sec. Litig.), 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001).  Additionally, while the complaint need not contain "detailed factual allegations, . . . [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive the motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  Determining whether the allegations of a complaint

nudge a plaintiff's claims across the line from merely "conceivable to plausible" requires the Court to "draw on its judicial experience and common sense." Id. at 1950-51.  In making its assessment, the Court may consider, in addition to the plaintiff's factual averments, any written instrument upon which the plaintiff necessarily relies, regardless of whether it is attached to the complaint or incorporated therein by reference.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002).  The Court also may take judicial notice of indisputable facts.  See Fed. R. Evid. 201.  Additionally, when the plaintiff is proceeding pro se, as Layens is, the Court may rely on the plaintiff's opposition papers in assessing the legal sufficiency of his claims.  See Crum v. Dodrill, 562 F. Supp. 2d 366, 373 n.13 (N.D.N.Y. 2008) (citing Gadson v. Goord, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)).  Legal conclusions masquerading as factual averments, however, may not be taken into account.  Twombly, 550 U.S. at 555.

Because Layens is proceeding pro se, the Court must read his Petition "liberally" and interpret it "to raise the strongest arguments" that it may suggest.  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010).  "Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements."  Carvel v. Ross, No. 09 Civ. 722 (LAK) (JCF), 2011 WL 856283, at *8 (S.D.N.Y. Feb. 16, 2011).

"When a defendant raises the affirmative defense of res judicata or collateral estoppel 'and it is clear from the face of the complaint . . . that the plaintiff's

claims are barred as a matter of law,' dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate." Austin v. Downs, Rachlin & Martin, 270 F. App'x 52, 53 (2d Cir. 2008) (quoting Conopco, Inc. v. Roll Int'l, 231 F.3d 82, 86-87 (2d Cir. 2000)).

    B.    Res Judicata

In his Petition, Layens contends that he "never hit any motorcycle nor destroyed any valid legal document," and that there was "no misconduct [o]n [his] part" to justify his termination. (See Pet. at 2-3). He further states in his opposition papers that, "[e]ven though the defendant has not been able to prove that the plaintiff was engaged in any types of misconduct, the Arbitrator determined that Amboy (Defendant) had just cause for the discharge." (Pl.'s Mem. at 1). To the extent that Layens asks the Court to vacate the arbitration award based on his disagreement with the arbitrator's conclusion that Amboy had just cause to fire him, his Petition must be dismissed under the doctrine of res judicata.

"The doctrine of res judicata, or claim preclusion, holds that 'a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" Monahan v. N.Y. City Dep't of Corrs., 214 F.3d 275, 284 (2d Cir. 2000) (quoting Allen v. McCurry, 449 U.S. 90, 94 (1980)). "[G]enerally, 'a valid and final award by arbitration has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.'" U.S. Postal Serv. v. Gregory, 534 U.S. 1, 16 (2001) (Ginsburg, J., concurring) (quoting Restatement (Second) of Judgments § 84 (1982)); Streit v. Amdocs,

9

Inc., 307 F. App'x 505, 509 (2d Cir. 2009); Pike v. Freeman, 266 F.3d 78, 90 (2d Cir. 2001); but see Williams v. Perry, No. 00-7366, 2000 WL 1506086, at *2 (2d Cir. Oct. 6, 2000) (citing McDonald v. City of West Branch, 466 U.S. 284 (1984)) (arbitrator's decision that plaintiff was fired for just cause would not be entitled to preclusive effect in a subsequent action brought pursuant to 42 U.S.C. § 1983).

To establish the defense of claim preclusion, a defendant must show that the "earlier decision was (1) a final judgment on the merits, (2) by a court of competent jurisdiction, (3) in a case involving the same parties or their privies, and (4) involving the same cause of action." EDP Med. Computer Sys. Inc. v. United States, 480 F.3d 621, 624 (2d Cir. 2007) (internal citations and quotation marks omitted).

Here, there is no dispute that the arbitrator's decision constitutes a final judgment on the merits. Nor is there any doubt that the arbitrator in this case constituted a "court of competent jurisdiction," as Layens does not now assert a claim under 42 U.S.C. § 1983. See Vargas v. Wughalter, No. 08 Civ. 11378 (DC), 2009 WL 2356832, at *4 (S.D.N.Y. July 30, 2009) ("Because the arbitration is not being applied against a subsequent § 1983 suit, the general rule that an arbitration award has res judicata effect applies."). Additionally, there is no question that the arbitration involved the same parties as the present case. Accordingly, to the extent that Layens seeks to vacate the arbitrator's decision on the grounds that Amboy lacked just cause to fire him — the very claim that the parties submitted to the arbitrator, (see Op. at 2) — his Petition should be dismissed.

    C.    <u>Failure to State a Claim</u>

Although Layens disagrees with the arbitrator's conclusion that Amboy had just cause to fire him, that disagreement is not the sole basis on which Layens seeks to vacate the arbitrator's decision. Indeed, in his Petition, Layens alleges that the "arbitrat[or] exceeded his power . . . or so imperfectly executed it that a final and definite award upon [the] subject matter submitted was not made." (Pet. at 1). He further alleges in his opposition papers that the arbitrator did not render a "fair decision" because the arbitrator "never granted any merits to employees" and did not allow Layens to testify or to "have the full opportunity to present [his] case." (Pl.'s Mem. at 2). Accordingly, the Court must determine whether these allegations are sufficient to state a claim to vacate the arbitration award.[7]

"A party petitioning a federal court to vacate an arbitral award bears the heavy burden of showing that the award falls within a very narrow set of circumstances delineated by statute and case law." <u>Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 388 (2d Cir. 2003). The "very narrow set of circumstances delineated by statute" is found in Section 10(a) of the Federal Arbitration Act. These circumstances include:

---

    [7]    Because Layens does not seek to vacate the arbitrator's decision on any other grounds, the Court need not determine whether any specific questions of law or fact that were necessary to support the arbitrator's conclusion that Amboy had just cause to fire Layens, such as whether Layens did, in fact, snatch the incident report from Mulahoo, are precluded under the doctrine of collateral estoppel, or issue preclusion. <u>See generally</u> <u>Ali v. Mukasey</u>, 529 F.3d 478, 489 (2d Cir. 2008).

11

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). With respect to the fourth ground, "[a]s long as the arbitrator has acted within the bounds defined by the parties' submissions and the arbitration agreement, vacatur under § 10(a)(4) is inappropriate." Otis Elevator Co. v. Local 1, Int'l Union of Elevator Constructors, No. 03 Civ. 8862 (DAB), 2005 WL 2385849, at *5 (S.D.N.Y. Sept. 23, 2005).

Here, although Layens quotes the language of Section 10(a)(4) in his Petition, (see Pet. at 1), neither his Petition nor his opposition papers contain any factual allegations to support his conclusory assertion that the arbitrator exceeded his powers. Indeed, the parties' submission called upon the arbitrator to decide whether Amboy had just cause to terminate Layens' employment, (see Op. at 2), and that is precisely what the arbitrator did. It follows that Layens may not rely upon Section 10(a)(4) as a basis for vacating the arbitration award.

Layens also alleges that the arbitrator who heard his case has "never granted any merits to employees." (Pl.'s Mem. at 2). Construing this allegation liberally, Layens appears to claim that "there was evident partiality or corruption in the arbitrator[]" because of the arbitrator's prior history of rendering decisions favorable to employers. In evaluating a claim of "evident impartiality or corruption," however, a court is confined to the record before it. See Int'l Produce, Inc. v. A/S Rosshavet, 638 F.2d 548, 551 (2d Cir. 1981) (confirming arbitration award where "the record is completely bare of anything remotely resembling 'evident partiality'"); Sidarma Societa Italiana di Armamento Spa v. Holt Marine Indus., Inc., 515 F. Supp. 1302, 1306 (S.D.N.Y. 1981) (quoting Saxis Steamship Co. v. Multifacs Int'l Traders, Inc., 375 F.2d 577, 582 (2d Cir. 1967)) ("the Court must 'scan the record to see if it demonstrates 'evident partiality' on the part of the arbitrators'"). Since the basis for Layens' allegation that the arbitrator was partial to Amboy is not record-based, he cannot rely on it as a ground to upset the arbitrator's decision.

Finally, Layens alleges that he "was not allowed to testify during the arbitration," and that his attorney "did not have the full opportunity to present the case." (Pl.'s Mem. at 2). These allegations may be liberally construed as a claim that the arbitrator "refus[ed] to hear evidence pertinent and material to the controversy," in violation of 9 U.S.C. § 10(a)(3). However, the arbitrator's opinion indicates that Layens did, in fact, testify at the arbitration, and that his attorney cross examined each of the

13

witnesses called by Amboy. (See Op. at 5-11). It therefore cannot be said that the arbitrator in any manner precluded Layens from fully litigating his case.

In sum, Layens has failed to allege that this case presents one of the "very narrow set of circumstances" required to vacate an arbitration award.

III.    Conclusion

For the foregoing reasons, Amboy's motion to dismiss the complaint, (ECF No. 7), should be granted.

IV.    Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Deborah A. Batts and to my chambers at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Batts. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal.

See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992).

Dated:   New York, New York
         July 18, 2011

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Loulou Layens
23 East 109th Street
Apt. 3E
New York, New York 10029

Daniel K. Wiig, Esq.
Mintz & Gold LLP
Fax: (212) 696-1231